Is there any allocation of time to the intervener? Yes, Your Honor. Kevin Minnick for the appellant. This morning we've got 15 minutes. I'd like to take 10 minutes to address the associational rights and the compelled speech causes of action. Co-counsel is with me. It's Brendan Hamme. He'd like to take five minutes to talk to you all about the viewpoint discrimination claim. I'd like to reserve about two minutes of my time for a rebuttal if possible. Thank you. And may it please the court. We're here today because California election law burdens primary candidates who do not prefer a qualified party in California in at least two key ways. First, it prevents them from appearing on the primary ballot next to a designation of their party preference. And second, and perhaps most significantly for today, it requires them to appear on the primary ballot next to party preference none. Even if that's not true. Well, it's true in a specialized sense. That is to say, California has a specialized definition of party. So that's certainly the position advanced by the state. That by definition of the California elections code, party means qualified party. Right. A couple of problems with that position. This actually overlays with both our compelled speech argument and the argument I'm making under the traditional Anderson balancing. The statute may well say that no one follows that term of art as a practical matter. So from a compelled speech perspective, if you're looking at what the reasonable voter might conclude when they see party preference, none. We submit and we've alleged that what the reasonable voter concludes is that that candidate has no preference for. And the material made available to the voter reading the voter pamphlet does not provide the specialized definition or explain what not none means in this context in that specialized sense. Indeed, Your Honor. And in fact, from the voters perspective, the primary and perhaps most simple way that they interact with this statutory scheme other than just the act of voting is filling out their affidavit of registration. Now, under Section 2150 of the elections code, every voter is required to fill out on their affidavit which, quote, party they prefer. And when they do that, they can select one of the six qualified political parties in California or they can fill in a blank with other. It is never explained to them in that context that there is a difference between the party that they prefer, which might not be qualified, and a qualified political party in California. Nor can the state say, well, that's okay because it doesn't really matter what you call it. Is it a party? Is it not a political party? What do you mean by a party? In one of the cases, I know the candidate wanted to say he was a member of the Tea Party. Is that a political party? Under the strict definition of qualified party in California, no. So Section 5100 governs that. No, no, I'm not talking about a qualified party. I'm saying is that a party even though it's not a qualified party? So statutory definitions for something called a political body in California exist? A party. So I think strictly speaking, we would have to say statutorily, not a party. In the common parlance and from the perspective of the reasonable voter who sees that designation on the ballot, absolutely it's a party. It's referred to as a party. People think of it as a party. And importantly, for purposes of Section 5100, for when the state is going to make a determination of what crosses that line, one of the ways to do that is by looking at the affidavits of registration. So when the voter fills out that affidavit of registration and it says what is your political party, and they say Socialist Party USA, not a party under the definition that the state is advancing. But if enough people say that on their affidavit of registration, 5100 says that can be a qualified political party. What if a couple of friends of mine get together with me and we decide we're going to run somebody for office, and we say what's a good name for our organization, and there are three of us, and we say Anti-Crime Party. Are you contending that the one of us who runs has a right to put Anti-Crime Party when the party is the three of us who got together over beers? If, in fact, that organization exists, the three of you are organized enough to say Anti-Crime Party. Well, we're organized and essentially had beers one afternoon and decided one of us was going to run. I'm not a member of this. It's not the three of us. It sounds like an interesting party, and I might like to be a member of it. I don't think we'd take you. It's just the three of us. Fair enough. From the perspective of someone who might like to vote for you and who might like to know what your positions are, having that information on the ballot is meaningful. That's our position. But if I'm allowed to say Anti-Crime Party and it's just the three of us, that in itself sounds to me a little bit misleading. It's just the three of us who agreed over beers. That's not how most people think about a political party. I think the primary category of what Your Honor's question gets to is the state interest in preventing. Preventing me from doing that. Yeah, exactly. Radical self-designation is, I think, what it's referred to in one of the briefs. We have a couple of ways of pushing back on that. First, it's kind of a tailoring point. If what the state is really concerned about is governing a misleading party designation that doesn't really refer to an organization that exists, the best way to get to that is to require some kind of organizational structure before you can identify yourself as preferring that quote-unquote party. Well, isn't that exactly what the state did? Because it's got six identified or qualified parties. And those identified and qualified parties are defined based on the expression of preference by voters on their affidavit of registration. Which, by the way, does not require them to choose a non-misleading name like the No New Taxes Party or anything to the sort. In fact, that's conceded in the state's brief. If you meet the numerical requirements of 5100 and you're not confusingly similar with an existing party name, then you're through the door. So the idea that the state has some kind of super important interest here in preventing the self-designation of parties with names like No New Taxes or Tough on Crime just doesn't hold up under the statutes. Seems to me counsel that, or would your side be okay with the following? Instead of party preference none, it had Willie Fletcher. What was it again? No New Crime? No Crime? Anti-Crime. Anti-Crime Party. Willie Fletcher, Anti-Crime Party with an asterisk after Anti-Crime Party. And the asterisk would designate that the Anti-Crime Party did not receive, under California law, is not a recognized party or did not receive enough of the votes or petition signatures to qualify. I take it that would be better than what currently exists right now in the original. Absolutely. And the reason for that is the locution, if you will, the word choice of the state on the ballot is important here. Party preference colon none is a burden on the constitutional rights. A longer statement of this candidate has stated no preference for a qualified political party in California would seem to me to be fine, at least under – Provided that the definition of qualified political party is provided so the reader understands what that means. Precisely, Your Honor, and indeed – That has to be on the ballot. Once the state has decided to put the party preference on the ballot, it ought to do it correctly or at least clear enough so that when a reasonable voter encounters that designation, they aren't left having a complete misunderstanding of what the candidate actually has a preference for. In one case, they'd have to say Socialist Party of the United States, or whatever it is, and say this is a real political party, but it's not qualified. And the next person down, the Fletcher group, would have to say no crime party, and that would have to have an asterisk saying this is really not a political party, it's just three guys having beer. And how many people would we have to designate by special explanation with asterisks? You know, you can barely get through the California ballot as it is. There's been no discovery on this point, has there? That's correct. We were dismissed at the 12B6 stage. There's been no discovery. So we don't know, in terms of answering Judge Reinhart's question, that you could have factual findings and have an election person come up and explain how this would all work. Precisely. And one of the issues... Or you could even figure it out. We could. It's a simple math problem, I hope. The question actually gets at a constitutionally significant difference between our case and just about every case that's been cited by the state and the interveners. It's a little bit twofold. The first is, ours is the first case that presents the lack of a blank space option. If we think the state is going to have an objection to these asterisks or to an explanation in the pamphlet of what's going on here, that's fine. Why can't the candidate appear on the primary ballot with nothing next to his name, instead of the misleading designation that he has no party preference? This is the first case to present that particular constitutional burden. But I thought this case you were only asking for the right to have the United Socialist Party of America on the ballot. With respect to the ultimate remedy that brings this set of statutes within the constitutional limitations, I don't think we're quite there yet. We were just dismissed on 12b-6. As we stand, we haven't even stated a claim for relief until we get a different ruling from your honors, hopefully. Where we would be if we were to make our showing to the district court that, in fact, there's a constitutional violation in terms of how to fix that? Do you reinstate the blank space option? Do you require, as we've pled, that our candidate be allowed to appear with the preference that he actually has? That's a question quite far down the line from where we're standing. You mean your complaint is that we don't like the system, that we don't know what we want? Excuse me if I wasn't clear. The remedy we would like, that we plead for, is self-designation. He should be able to say what it is that he prefers. But if there is a lesser remedy that brings the statute within the constitutional protections, we shouldn't have been dismissed at 12b-6 on that basis. I think I'd like to yield to my co-counsel and let him address your honors' questions, if any, about the viewpoint discrimination and reserve any remaining time. All right. Thank you. I think we'll give you some adjustment on the time. We've taken a lot of your time. Appreciate that. Thank you, your honor. Thank you, your honors. This case can be analyzed in multiple ways. But whether it's viewed through the lens of a limited public forum, as a non-public forum, or simply via the Anderson balancing test, viewpoint discriminatory regulations deserve strict scrutiny by the court. And so I'll focus my efforts there and submit on the forum question, unless your honors have any questions. Now, these restrictions are viewpoint discriminatory on their face. Candidates whose viewpoint is a preference for a qualified political party are allowed to indicate their true party preference on the ballot. Candidates whose viewpoint is a preference for a non-qualified party are forced to put party preference none. And party preference is a quintessential expression of a person's viewpoint. When we talk about preferences, we're necessarily talking about viewpoints. And viewpoint discrimination exists where the government targets not subject, but particular views taken by a speaker on a topic. And here the subject is political party preference. Further delineating who can indicate that party preference based on their views is viewpoint discrimination. And Rubin supports a holding that these restrictions are viewpoint discriminatory and thus subject to strict scrutiny. The first step in the Rubin court's analysis was to ascertain whether or not the restrictions were viewpoint based. There the court considered regulations that prohibited status designations on the ballot, particularly the use of the word activist. And the court found that that regulation was viewpoint neutral because no candidate could use the term activist on the ballot. Peace activists, defense activists, pro-choice, pro-life activists alike were not able to use that. And in so holding, the Rubin court distinguished Rosen versus Brown, in which the Sixth Circuit held that prohibiting the designation independent was unconstitutional where the regulations allowed for other party preference designations, as they do here. And unlike in Rubin, these restrictions burden core political speech in the form of a party label. Now, defendants argue that these aren't viewpoint based restrictions because the assessment of a party qualification is based on objective criteria. But that misapprehends the argument. This is about the expression of a viewpoint by a candidate, not whether or not the method for determining a political party's qualification to participate in the primary election, which as the Chambliss court recognized, is no longer a role they fill, is viewpoint neutral. And now, relatedly, defendants also argue that it's not viewpoint discriminatory because the state may require some preliminary showing of a significant modicum of support before placing a party's candidates on the ballot. But again, these are not the party's candidates, they're voter nominated candidates. And moreover, what's at issue here is whether or not the state has a sufficient interest in censoring the speech of candidates who have already attained ballot access. After a candidate has attained ballot access, there's no justification for requiring an additional showing of popular support in order for them to express their viewpoint. They cite to Forbes, but Forbes is distinguishable both factually and legally. If Forbes was about whether or not a candidate could gain access to the form in the first instance, here, candidates are already on the ballot. A more analogous case would be if the television commission allowed Forbes on the stage, but mandated that he say no comment when asked about his party affiliation or his policy platform because his viewpoints lack popular support. I can see that I'm over time. My apologies, Your Honor. Thank you. Thank you. We'll give you two minutes. Maybe even three. Thank you. May it please the Court. Peter Chang, Deputy Attorney General for Respondent Secretary of State. I do not have 15 minutes, but I will be yielding three minutes to the interveners. Could you start by trying to make clear, for me at least, exactly what the state's problems are, what your interests are that you are trying to – let's assume that this is not a severe infringement on rights at the moment under Anderson's verdict, that it's not severe, but it's somewhat less than severe, either little or moderate or whatever on a sliding scale, and we have to balance the state's interests. What is it that the state wants to accomplish by requiring the no party preference? The state would like to manage its ballot and prevent voter confusion, and I think what Your Honors have pointed out is if any candidate is able to self-designate and put whatever he or she wishes in the party label space, then there would be absolutely no control. You could have three guys sitting around drinking beer in a garage band deciding they want to – That's a good example. Who thought that one up? It's a great example, and it doesn't even have to be three guys. It could be two. It could be one. Any candidate could put anything they want into the party label space, and it could be one person late at night sees a political advertisement or sees something on the news and says, well, I don't like that politician, so I'm going to form the anti-this politician party and put that party name, so-called party name, into the party label space, and that could lead to voter confusion. The Fifth Circuit in DART summarized it eloquently. I know there's some discussion here about the technical definition of a party under election law, but it's not just a technical definition. As the Fifth Circuit in DART pointed out, the common understanding of a political party – Before you say that, that's your first objection. Is there any other objection, any other state interest observed by this? To prevent voter confusion, to manage the simplicity of the ballot so we don't have a lot of asterisks next to candidates' party labels. But, Counsel, it seems like you're, in one attempt to end voter confusion, you're actually adding to it. I mean, when I see the ballot and I see party preference none, my instinct is like, well, I guess he doesn't have a preference. That's how I read it. When I think the socialist guy, I mean, there are other parties that might get you more votes, so he clearly has a preference. So how does that lessen confusion to say someone doesn't have a party preference when he does? Well, he doesn't, Your Honor. He doesn't have a qualified party preference. But it doesn't say that. It doesn't say qualified party preference or it doesn't say he does not belong to a party that received so many votes or received as many petition signatures. It says party preference none. The understanding of the voters in California and qualified political party system, it's a system that California voters are familiar with. Is there any discovery on that? I've been in California for many years. I had no idea that this was so until I read the briefing in this case. Now, I may be unusually ignorant, but I was ignorant. Well, it makes two of us. We can be the ignorant party. I would submit that. You'll stipulate that we're ignorant. But unlike all the rest of the voters in California, we are unusually and atypically ignorant. But, you know, if Your Honor were to see, if any voter were to see on the ballot that someone's party preference is the ignorant party, there would be an assumption there that there is actually a political party and it's not two people who chose that name for themselves. What about my idea of just having the ignorant party with an asterisk and then it would just say under California law, this part is not recognized as having enough votes or enough signatures? If that were the case, one, the ballot would be unmanageable. Why? Why would it be unmanageable? Either you'd have an asterisk or you wouldn't. Well, because the placement of the asterisk and the explanation in the ballot itself would, you know, it could potentially lead to other lawsuits. But wait, wait, hold on, hold on. Is there any factual in the record at all to suggest that putting an asterisk by someone's name? I mean, they have asterisks by people's names in baseball records, in basketball records, in the Academy Award nominees and winners. I mean, at the one time we're trying to say voters understand the system and this time we say they're so confused. Is there any evidence in the record to support the idea that an asterisk would create incredible voter confusion? Well, there's no evidence that's needed, Your Honor. This is on the pleadings. This is a 12B6 motion. All the plaintiff's allegations are assumed to be true. There's no allegation that, you know, an asterisk, whether an asterisk would increase or decrease voter confusion. Well, no, but the allegation is that what stands currently is unfair. And there are different doctrines we can put that box into. But basically they're saying, look, it's misleading. And in part of our balancing test that we would apply under Burdick-Anderson, we have to assess the state's interest and how solid that is versus what exactly they're looking at in terms of things being unclear. There are many cases in the Supreme Court and the Ninth Circuit where these cases have been decided not on the pleadings but at summary judgment because they have facts developed. Is the star asterisk idea? Maybe it's terrible. Maybe that's been tried in other places and it's a horrible idea. But that's what you have summary judgment for and you develop facts to go one way or the other. So do you have anything like that in this case to back up assertions that that would lead to voter confusion? Well, here we have to go back and look at the standard here. The primary issue or the first issue that the court should resolve is the level of burden. If it's not a severe burden, then we go into this balancing test and the state is not required to narrowly tailor its solution to the problem. How do I figure out if it's a severe burden? It's very clearly deceptive to my mind, very clearly deceptive to the ordinary voter when someone who is a member of the Socialist Party, which is a non-qualified party under California law, is obliged to say no party preference. I don't think that's confusing. I think it's deceptive. So why is that not a severe burden? Well, because, one, it's not deceptive. Well, of course it's deceptive as the ordinary reader would understand that statement. Well, again, we have to go back to what is the term of art that's used here. And the courts have said states may use terms of art in defining the ballot language. Well, of course they can use terms of art, but if the audience doesn't understand the terms of art and, in fact, understands the word to mean something quite different, it's deceptive. Well, with the – I guess I have two points on that. The first is I'll point out that this court in the Socialist Worker Party in Caruso have pointed out that even if some voters may be misled by the language on the ballot, that's not a basis to declare that statute unconstitutional. Yes. How about if virtually every voter is misled? Well, there's no allegation that virtually every voter is misled. There's no allegation to that. There's nothing to support that. Well, there's nothing to support that except common sense. I would respectfully disagree. I think the – So you are saying that Judge Owens and I are atypically ignorant California voters. No, I'm not atypically ignorant California voters. No, no, he's saying that everybody else understands what Judge Owens and I do not understand. There's no – what I'm saying is that the common – and as the Fifth Circuit pointed out in Dart, is that the common understanding when there's a party, when there's an indication that there's a political party, is that there's actually a political party. And you're saying that in ordinary understanding, everybody understands that the Socialist Party is not a party? Well, we don't know. We don't know whether the Socialist Party is actually a party. And the party qualification system in California, which hasn't been challenged, it has a very low burden to qualify a political party. But you would admit that there are other parties in California other than the six qualified parties? I don't know because there are only six that have been qualified. And under the elections law, it's a very low hurdle. Only 0.33% of registered voters need to register in state of preference for a political body, for that political body to be identified to qualify. And 0.33% is a very low hurdle. There are over 19 million registered voters in California. So only approximately 64,000 voters need to indicate a preference for a political body for them to be qualified. The percentage sounds really low, but then 64,000 sounds pretty high. Well, 64,000 out of over 19 million registered voters across the state. It's a really low threshold. So it's very easy for a party to get qualified and to be placed on the ballot. So when a voter sees that there's a political party that's identified on the ballot, the voter has the assurance that, okay, this is a political party, as we know and understand, and a system that we've dealt with for over 100 years. How many sentences or how many words would it take to put on a ballot that says, instead of saying none, which I think is misleading, to say asterisk, not a member of a recognized political party under California law. How many words does it take to say that? It's not how many words it takes, Your Honor. In fact, that could just create more problems. Some candidates may think that having that asterisk puts them in a special category where there is some special indication that says that whatever organization that they're with or not with, it's in the minority view or has a view that's not accepted by very many people. We could be back here litigating over dimensions. They can have party preference none or they can do the asterisk. When they sign up for the ballot, they can check a box saying which one they want. Again, that could just lead to more voter confusion. That could just lead to – it's a problem that – it's a solution that the state does not need to engage in because the current system, not only is it – it leads to – we believe that it's not deceptive. It's accurate both under the technical definition, the elections code, and also the common understanding as voters. I don't want to belabor that point. You must know whether there are political parties in California that are not qualified. We know there are political bodies that are attempting to qualify. Political parties. I mean are you – is it the state's position that the qualified parties are the only political parties under California law? They are the only ones eligible to participate in elections and have their names appear on the ballot. There are numerous – there are political bodies attempting to qualify. There's no evidence here that – I'm not asking about a political body. I'm asking you are these the only political parties recognized under California law? Yes, Your Honor. All right. So any other – any asterisk or anything that referred to any other political party would not be accurate. It would be misleading. That's correct, Your Honor. We believe that would introduce more confusion with the voters, and I will point out – but I'm saying that these are the only political parties recognized under California law. Correct. There are only six parties that California law recognizes. Use of the word qualified I think undercuts your argument because you're saying qualified political parties, which suggests that there are other parties that aren't qualified. Otherwise, all you would have to do is say party. Right, and that's the word that's used. The very use of the phrase qualified political parties suggests that there's such a thing as a political party that is not qualified. Well, it's not a party. It's a non-qualified political body or organization, something that – and that's how – it's not – some kind of association that does not have – has not met the minimum – have not shown the minimum modicum of voter support. I don't understand the definition. Right. And before I – if I can make one more point before I yield the rest of my time to the interveners, it's that there is one – there is some measure of control that the elections code puts on the names of the political parties that prevents voter confusion as well. It's the – before a party may propose a name to be used as the name of a political party, it has to – that proposal has to be made to the Secretary of State. And the – and that name cannot be too similar to the name of an existing party. So that asserts some additional level of control over – to reduce potential confusion. The district court pointed out that someone could submit the name of a proposed party to try to use the name of the Republican Party but with a slight misspelling, and that could confuse the voters. Or someone could create a new name such as Democratic USA Party. And once we take away the control over the party names or what's in the party label, then it becomes a free-for-all and anybody can use that to do their campaign, to express their viewpoints, to sloganeer, all of which are – the state may restrict. Thank you. I will give your colleague a couple of minutes. Thank you. May it please the Court, Your Honors. Chris Connell for Intervenor Californians to Defend the Open Primary. I'll jump right in. I want to address the issue of this being a misleading designation and that – affirmatively deceptive, Your Honor. I don't believe that there's any difference at all between this and the Socialist Workers Party from this court several decades ago where any candidate who ran for office and who was not aligned with a registered political party had to show up on the ballot as an independent. And the Libertarian Party and the Socialist – and I say Libertarian because this issue appeared in the California Supreme Court as well for the Libertarians, but both cases were decided the same way. The plaintiffs in those cases said, well, that's misleading. That's false. We're not independent. We are aligned with the Libertarian Party. And the court, this court in Socialist Workers Party, and the California Supreme Court in the Libertarian Party case, both said, no, you're not aligned with a party because party has a specific meaning in California law and we do not regard it as misleading and unconstitutional burden for you to be – for the state to inform the voters that you are independent, notwithstanding your preference for the Libertarian Party. And quite frankly, any other rule would allow for, as plaintiffs have frankly admitted, self-designation that would turn the ballots into a billboard or a bumper sticker for the candidates to go out and raise their campaign and campaign to voters. And the courts, the Supreme Court and this court and courts all across the land, have been very clear that that is not what is required of the state in putting together the form of the ballot. As much as the plaintiffs would like to suggest otherwise, this is not a novel case. There have been cases up and down and sideways all over the place, including several cases relating to Proposition 14 and this particular format, that have repeatedly held that not having the ability to put your preferred party label on the ballot is not a severe burden. In fact, they go further than that. They don't just say not severe. They say it's a slight burden. Many of them say it's an insubstantial burden. It's a minor burden. And having concluded that it is a slight burden, they then conclude that the interest in avoiding confusion and that sort of misleading of the voters of what might be a party more than justifies the slight burden on the candidates. Is there enough burden alleged that we should remand to actually have a balancing with evidence in front of the district judge? I mean, we're hearing all these complications and burdens upon the State, but district judge hasn't heard any of this. Your Honor, I think at two points. First, I would reiterate the point that Mr. Chang made, which is the Supreme Court has been very clear that the State doesn't have to go out and have evidence that there is confusion, that it can anticipate that possibility and legislate accordingly, and that it does not need to justify with elaborate evidence the interests that are supporting its regulatory decisions, as long as they are reasonable and nondiscriminatory. The second point I would make is that given the number of cases that have been decided on this issue in this circuit, in the California Supreme Court, in the Supreme Court, in the Dart case, in the Eleventh Circuit, that at some point it's clear that those allegations are not sufficient to state a claim for relief in this sort of a case. And this Court has held, you know, we cite some cases on page 65 of our brief, has held that just because a prior case was decided on summary judgment, if reading that decision it's clear that then in subsequent cases the allegations are not enough to state a claim, you can resolve that issue on a 12B6 motion. Election law cases are resolved on 12B6 motions applying the balancing test all the time. We just submitted a list of supplemental authorities and I think we listed eight or ten cases just within the last year that have affirmed or decided 12B6 motions in favor of the State in the context of an election law case balancing under the Burdick-Anderson test. Given the extensive case law on this issue and the fact that it all uniformly falls on the side of upholding the laws at issue, it is our contention that there is no need for an evidentiary hearing, that it's clear at this point that as a matter of law the allegations here, given the slight burden and the interests that are well established,  that there's no amount of evidence that plaintiffs could bring forward that would change that. I would point out that in a number of the cases that reached that conclusion, that did have trials or summary judgment motions, the plaintiffs actually won in the lower courts. The court conducted evidentiary hearings, made findings of fact, determined that it was a violation of the Equal Protection Clause or associational rights or what have you. And the reviewing court determined that no, notwithstanding those factual findings, as a matter of law it still was not a sufficient claim and overruled the determination in plaintiff's favor. So in that case it wasn't the Court of Appeal making factual findings. It was the Court of Appeal or the Supreme Court in Timmins deciding as a matter of law that it was not a sufficient claim, notwithstanding what had been proven. And in this case we think the same is true. I think we've gone way over time. My apologies. Thank you. Okay, we'll give you three minutes. Thank you, Your Honors. I think I need to make three points and may even be able to do it more quickly than three minutes. The first is that there's been a suggestion that we didn't have any allegations, that folks would become confused under the circumstances. I just want to direct the panel to ER 84, and that's Paragraph 40 of our complaint, which alleges just that. Second point that I was hoping to make is, again, to refer to this statutory regime here in order to try to get to the bottom of whether there really is any such thing as a party versus a qualified party in California. Forgive the hypothetical facts here, but suppose I'm a voter and I want to affiliate with the Socialist Party USA, and I would actually like them to be qualified in California, so I fill out my affidavit of registration, and where it says, pursuant to Section 2150A8, the affiant's political party preference, I write in the blank, Socialist Party USA. Now, I hope that enough of my fellow Californians have done the same thing to invoke 5100 of the Elections Code. A party is qualified to participate in a primary election under any of the following conditions. B1, on or before the 135th day, before a primary election, etc., one-third of 1% of California voters have declared that preference. So, fast forward to the primary election. I'm the same voter. I encounter the primary ballot. I see my preferred candidate, who I know to be my preferred candidate, because I went to a rally where he gave a speech. And there he is on the primary ballot, and it says, party preference none. Party preference is the same language that I was asked when I filled out my affidavit of registration as a voter, and I indicated that my party preference is Socialist Party USA. But here's the candidate. Asked the same question, reprinted on the ballot by the state of California, and it says none. Our position is, this is a significant constitutional burden, which leads me to my third point, which is the state of the case law here. It's been suggested that, up and down, this issue has been decided by various courts. All of the precedent here that's been relied upon by the intervener and by the state falls into two categories. You have traditional primary system cases where court after court has held that if the way you got onto the ballot was through the independent nomination procedure instead of through a partisan primary, your name can appear on the ballot with the word independent. There are cases that hold you can't prevent the state from saying independent, and there are cases that hold that other parties can't put the name next to you if you're there as an independent. There is no case that says independent is the same as party preference, none. It's apples and oranges, frankly, particularly when you have a top two primary system in California which removes the political parties from the nominating process altogether so that the name that appears next to the candidate's name is a preference, not a designation of how that person got on the ballot, either as the standard bearer for one of the registered political parties in California or through the independent nomination process. Second category of cases, those decided under open primary systems like this one, two Prop 14 cases, one from state court, one from federal court, and then the Fifth Circuit decision in DART that was cited by the state just now. In all three of these cases, there was a failure of proof. Chamness is summary judgment, and the other two are preliminary injunction cases. In DART it had actually been converted into a trial on the merits when the district court held the PI hearing. In every one of those circumstances, a plaintiff has the burden to come forward with evidence to show the burden. We're at 12B6. We've alleged those burdens, and we were just never given the chance to prove them. We've got four minutes. Okay. Thank you very much for the extra time, Your Honor. We appreciate it. Thank you, counsel. Thank you all very much. Interesting case. This case is argued will be submitted, and the court will stand in recess for the day. All rise. Court is in recess for the day.
judges: Reinhardt, W. Fletcher, Owens